ALAN ADELMAN, ESQ.   BAR NO:  170860
LAW OFFICES OF ALAN ADELMAN
44 Montgomery Street, Suite 3340
San Francisco, California  94104
Telephone:      (415) 956-1376
Facsimile:      (415) 358-4060
email:          alan@alanadelmanlaw.com

Attorney for Plaintiff
TAMARA HILL

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| TAMARA HILL, | ) | CASE NUMBER: |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | **DEMAND FOR JURY TRIAL** |
| vs. | ) | |
| | ) | |
| FEED XYZ, INC., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff TAMARA HILL ("Plaintiff") alleges as follows:

### JURISDICTION AND INTRA-DISTRICT ASSIGNMENT

1.      The jurisdiction of this Court is invoked under the provisions of 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

2.      Pursuant to Civil L.R. 3-2(d), this case should be assigned to the San Francisco or Oakland Division, as this case arises in San Francisco County, California.

### PARTIES

3.      Plaintiff resides in Alameda County, California.  Prior to the termination of her employment, Plaintiff was employed by Defendant FEED XYZ, INC. ("Defendant") in Defendant's San Francisco, California office.

COMPLAINT; DEMAND FOR JURY TRIAL

4. Plaintiff is informed and believes, and on that basis alleges, that at all times stated herein, Defendant has been a Delaware corporation doing business in San Francisco, California.

## ADMINISTRATIVE EXHAUSTION

5. On December 17, 2018, Plaintiff caused to be filed with the California Department of Fair Employment and Housing ("DFEH") a Complaint alleging that Defendant discriminated against Plaintiff, and terminated Plaintiff's employment, because of Plaintiff's gender.

6. On December 17, 2018, the DFEH issued to Plaintiff a Notice of Right to Sue in association with the aforementioned Complaint.

7. All administrative exhaustion requirements have been timely fulfilled as to Plaintiff's gender discrimination claims against Defendant.

## GENERAL ALLEGATIONS

8. Prior to commencing employment with Defendant, Plaintiff was employed with FutureBrand Speck in the position of Director of User Experience.

9. While with FutureBrand Speck, Plaintiff built a strong relationship with the Executive Team and served on the FutureBrand Speck Board of Directors.

10. Plaintiff understood that FutureBrand Speck was grooming Plaintiff to serve in either a Managing Director Role or a prominent Global position.

11. Plaintiff had no intent to end her employment with FutureBrand Speck.

12. During Plaintiff's employment with FutureBrand Speck, Defendant initiated unsolicited communications with Plaintiff.

13. Defendant conveyed to Plaintiff that Defendant wanted Plaintiff to resign from her employment with FutureBrand in order to enter into employment with Defendant.

14. In aggressively recruiting Plaintiff, Defendant emphasized its financial stability and represented that Defendant had several million dollars of cash reserves and could easily sustain a loss of business without that appreciably impacting the company's fiscal health.

**COMPLAINT; DEMAND FOR JURY TRIAL**

2

15. On October 6, 2017, while attempting to induce Plaintiff to resign from her employment with FutureBrand Speck and to accept Defendant's offer of employment, Defendant's CEO, Rob Armstrong, issued Plaintiff a written promise setting forth, "As an addendum to your contract we are happy to offer you 2.5% EMI Options in the primary holding company Defendant Communications Limited."

16. Plaintiff emphasized to Defendant that her primary monetary incentive to resign from her existing lucrative position to accept employment with Defendant was the stock option grant which Defendant was promising.

17. Defendant represented to Plaintiff in no uncertain terms that the vesting schedule for her options would begin immediately as soon as she signed the offer letter.

18. An additional material representation which Defendant conveyed to Plaintiff to induce her to accept employment with Defendant was that conversion of sales was not expected, and certainly not required, within Plaintiff's first year.

19. Defendant represented to Plaintiff that her initial charter the first year was to focus entirely on assessing the operations of the San Francisco office; managing the operations of Defendant's San Francisco office, building a team, and developing the pipeline for future sales.

20. Defendant also represented to Plaintiff that Defendant would fully support Plaintiff's efforts by ensuring that the appropriate senior executives within Defendant would attend Plaintiff's business development meetings with potential customers.

21. This was a crucial element of Defendant's representations which induced Plaintiff to accept employment with Defendant, as Defendant's San Francisco office was in dire need of a substantial amount of operational and personnel development; Defendant had absolutely no pipeline for business originating out of the San Francisco office; and the anticipated time frame necessary to begin closing the desired sales under the existing circumstances was understood to be upwards of a year or more.

22. On October 10, 2017, based on the above representations, Plaintiff accepted Defendant's offer of employment to serve as Defendant's Managing Director of Defendant's San Francisco office.

**COMPLAINT; DEMAND FOR JURY TRIAL**                    3

23. In accepting employment with Defendant, Plaintiff promptly submitted Plaintiff's resignation from her existing employment.

24. Following the commencement of Plaintiff's employment with Defendant, Plaintiff learned that Defendant had not yet finalized Plaintiff's stock grant.

25. However, Defendant did not advise Plaintiff that the "2.5% EMI Options" which Defendant specifically offered to Plaintiff on October 6, 2017, and which Plaintiff specifically accepted on October 10, 2017, were not vesting at that time.

26. Plaintiff understood from Defendant's representations that Plaintiff's 2.5% EMI Options would be fully vested as of October 10, 2018.

27. Plaintiff would not have resigned from her existing employment to accept employment with Defendant absent Defendant granting Plaintiff this equity interest in the company.

28. Regrettably, Plaintiff learned almost immediately upon commencing her employment that Defendant has further misled Plaintiff regarding the nature of the position which she was to assume and the level of executive support which she would receive.

29. Plaintiff was immediately bombarded by the staff on Plaintiff's new team regarding the utter lack of leadership and support from Defendant's executive personnel.

30. Much of Plaintiff's time over the course of her initial six months was dedicated towards building the operational infrastructure which was entirely lacking upon her arrival. In fact, Defendant did not even have so much as an employee handbook in place, let alone any policies or procedures pertaining to employee relations, benefits and all other operational protocol.

31. Additionally, Plaintiff was required to spend a great amount of time building a team which had the experience level and skill sets to accomplish the desired business objectives.

32. With regards to the level of support which Plaintiff directly received from Defendant's executive team, that too was entirely lacking. Executives who Plaintiff understood would be attending important business development meetings with Plaintiff simply did not attend. On multiple instances when Plaintiff needed important information from corporate, such as fundamental Profit and Loss reports,

COMPLAINT; DEMAND FOR JURY TRIAL

4

Defendant would completely fail to provide the basic documentation and data which Plaintiff needed.

33.     Even more concerning, Plaintiff observed that Matt Lynch, Defendant's President to whom Plaintiff directly reported, conducted himself in an offensively sexist manner and treated Plaintiff much differently than he treated Defendant's male executives.

34.     Substantiating Plaintiff's concerns, Steven Bennett Day, Defendant's Chief Creative Officer, directly admitted to Plaintiff that Mr. Lynch is a "douche" and treats female employees differently than male employees.

35.     Mr. Day also disclosed to Plaintiff that Mr. Day has heard Mr. Lynch making inappropriate, sexist comments regarding Plaintiff.

36.     Mr. Lynch has directly called out Plaintiff's gender in a discriminatory and demeaning manner when Mr. Lynch instructed Plaintiff to ensure that Plaintiff's subordinate employees did not see Plaintiff as their "mommy" in response to Plaintiff advising Mr. Lynch that Plaintiff's staff was providing her positive Defendantback regarding her leadership.

37.     Following a meeting on one occasion, Mr. Lynch warned Plaintiff that he was her "daddy", not Andrew Reeves, Defendant's Chief Operations Officer.   While Mr. Lynch warned Plaintiff that he was her "daddy" and not Mr. Reeves, Mr. Lynch also warned Plaintiff to speak with Mr. Reeves less often than she had been.

38.     In May, during a work visit to New York City, Mr. Lynch directed Plaintiff to speak with the restaurant hostess at the Soho House Restaurant to request a table for dining, as the restaurant would be more likely to give a table to Plaintiff than to him.

39.     Mr. Lynch made constant references to Plaintiff's physical appearance and how he observed that she drew attention while walking down the street.

40.     Mr. Lynch oddly boasted to Plaintiff that a lawsuit had been filed against him by the former Managing Director of Defendant's San Francisco office because, according to Mr. Lynch, she showed up at Mr. Lynch's hotel room naked and he rejected her.

41.     Not only did Mr. Lynch communicate highly offensive and discriminatory statements to

**COMPLAINT; DEMAND FOR JURY TRIAL**                                   5

Plaintiff and regarding Plaintiff, but Defendant treated Plaintiff in an adverse manner relative Defendant's male executives with regards to several terms and conditions of her employment.

42.     On a regular basis, Defendant excluded Plaintiff from meetings and events which the male members of Defendant's Executive Leadership Team attended.

43.     Plaintiff was excluded from attending the Cannes Film Festival and was merely advised, "Sorry, Tamara, you weren't included"

44.     On those occasions when Plaintiff  was invited to attend events with the Executive Leadership Team, Plaintiff was regularly assigned to substantially lesser accommodations than those in which Mr. Lynch and Mr. Day would lodge.

45.     Plaintiff was excluded from several Executive Leadership and Board meetings and was generally not so much as provided the notes from those meetings without Plaintiff having to secure copies through her own initiative.

46.     Plaintiff facilitated several meetings with potential new accounts, such as FitBit, and no other Executive would dignify the meeting with their attendance.

47.     Plaintiff was regularly shut down from speaking in leadership meetings.

48.     Mr. Lynch publically took credit for work which was actually done by Plaintiff and not Mr. Lynch, such as the GDS video and conference, hosting design week and several new business leads which Plaintiff facilitated on behalf of Defendant globally.

49.     After Plaintiff's sales forecasts became particularly strong, and when it became increasingly clear that Plaintiff was facilitating virtually all leads, Defendant stopped hosting the sales and marketing meetings, and the forecasts of Plaintiff's leads were no longer shared with other employees.

50.     Mr. Reeves regularly denied Plaintiff access to important documents which she needed to manage her office.

51.     Another female Managing Director was recently hired and Plaintiff alleges, on information and belief, that she has already abruptly resigned after having dealt with several of the same issues which Plaintiff had encountered.

**COMPLAINT; DEMAND FOR JURY TRIAL**                                6

52. Defendant's discriminatory adverse treatment towards Plaintiff significantly compromised Plaintiff's ability to perform and to succeed in her employment with Defendant.

53. However, despite Defendant's discriminatory conduct, Plaintiff performed at an exceptionally high level under the circumstances.

54. Approximately ninety percent of Defendant's entire global pipeline was encompassed by opportunities which Plaintiff directly facilitated.

55. The wealth of opportunities which Plaintiff generated was well within the appropriate stage of the sales cycle when Defendant abruptly terminated Plaintiff.

56. Emblematic of no KPIs being established was that Plaintiff was specifically advised that she was not expected to convert any specified level of sales during the initial year of building Defendant's sales pipeline. Plaintiff's specific job was to build Defendant's sales pipeline to show opportunity, in addition to her multiple other Managing Director duties. Defendant made it clear to Plaintiff, and Plaintiff agreed, that the sales cycle for opportunities to convert to sales was an absolute minimum of 3 to 6 months.

57. Emily Armstrong, Defendant's Global People Director, advised Plaintiff that Plaintiff's staff had issued her outstanding reviews at the 3 month, 6 month and 9 month marks of Plaintiff's employment.

58. As of July, 2018, Plaintiff successfully facilitated meetings within London through her business contacts at a large tech company. This opportunity was exactly what Plaintiff was brought on to execute.

59. In August, 2018, Plaintiff generated a potentially lucrative opportunity with another large company, which was also the exact type of high volume business which Defendant was seeking.

60. In September, at the GDS Summit in Mexico, Plaintiff received exceptionally favorable vendor feedback. It was clear that Plaintiff had been very successful in her efforts at that important function.

61. Following the event, through the remainder of September, Plaintiff executed multiple

COMPLAINT; DEMAND FOR JURY TRIAL

follow-up meetings with several potential high volume customers.

62.   As of September 26, 2018, Mr. Lynch sent a Profit Alert email to the Executive Leadership Team.  Plaintiff was the only recipient who responded with potential solutions for new business meetings over the course of the ensuing days.  Nobody dignified Plaintiff's message with so much as a response, although all of the male executives bantered back and forth amongst themselves.

63.   In what proved to be the final two weeks of Plaintiff's employment, Plaintiff continued to perform at a high level and generate strong results, including the following:

a.   Plaintiff developed marketing materials for a sales event, spearheaded Defendant's participation in the event and generated all leads arising through the event.  Plaintiff's performance was so strong that Mr. Lynch even took credit for all of Plaintiff's work (which Mr. Reeves admitted to Plaintiff).   Defendant received the best review of all vendors attending this sales event based entirely on Plaintiff's performance.

b.   Due to Plaintiff's successful lead generation results, Plaintiff earned the authority to hire a new Creative Director to assist with all of the potential new business.  This employee began only 3 days prior to Plaintiff's termination.

c.   Plaintiff received emails from the week prior to her termination acknowledging how solid a job she was doing and which discussed various facets regarding the potential sale of Defendant.

64.   On October 10, 2018, on the exact one year anniversary of Plaintiff accepting Defendant's offer granting Plaintiff "2.5% EMI Options," Defendant abruptly terminated Plaintiff's employment without any notice and without any legitimate business reason.

65.   Although terminating Plaintiff exactly one year from the date that Plaintiff accepted Defendant's offer which granted Plaintiff "2.5% EMI Options," Defendant has refused to tender to Plaintiff her rightfully earned EMI Options.

66.   Defendant's stated basis for terminating Plaintiff was "business performance criteria and a desire by the Company to make a change in leadership in its San Francisco Office."

**COMPLAINT; DEMAND FOR JURY TRIAL**

67. When Plaintiff inquired of Mr. Reeves, as to why Defendant has abruptly and without any notice or reason fired Plaintiff, Mr. Reeves' justification was a stated fifty percent loss of the CRM eBay business within the past two days. That alleged basis was impossible to believe, as Plaintiff had just met with Kim Pace who runs the account and Ms. Pace knew nothing of the supposed loss. Yet, Ms. Pace was told to advise Plaintiff's team regarding Plaintiff being terminated within 2 hours following Plaintiff's firing.

68. Plaintiff had absolutely nothing to do with that account or the contract negotiations associated with that account. If somebody was to be terminated as a result of events within that account, no reason whatsoever existed for that person to be Plaintiff.

69. Quite the contrary. If that account has suffered a substantial reduction, this development would mitigate even more in favor of Plaintiff remaining employed with Defendant. If anything, Plaintiff should have remained on board to help close the substantial volume of new business opportunities which Plaintiff had independently generated.

70. The CRM business account had nothing to do with Plaintiff's role. Furthermore, Defendant represented to Plaintiff that the loss all happened within the two days leading up to Defendant abruptly terminating Plaintiff.

71. When attempting to justify firing Plaintiff, Mr. Reeves focused also on Plaintiff's "lack of conversions," which was entirely contradictory to the originally stated pretext of losing business in the CRM business account and entirely inconsistent with everything that Defendant had represented to Plaintiff both prior to and during Plaintiff's employment regarding Defendant's expectations of Plaintiff throughout her first year.

## FIRST CAUSE OF ACTION
## FRAUD AND DECEIT - INTENTIONAL MISREPRESENTATION

72. Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

73. Throughout the negotiations which led to Plaintiff entering into an employment

COMPLAINT; DEMAND FOR JURY TRIAL

relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant made several representations as to past and existing material facts.

74. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several representations as to past and existing material facts which were false.

75. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant knew that Defendant communicated to Plaintiff several representations as to past and existing material facts which were false, or communicated the misrepresentations in reckless disregard for whether they were true or false.

76. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several representations as to past and existing material facts which were false for the purpose of inducing Plaintiff to rely upon such misrepresentations to enter into the employment agreement and to continue to perform pursuant to the terms and conditions of the employment agreement in reliance upon such misrepresentations.

77. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Plaintiff was unaware of the falsity of Defendant's representations and justifiably acted in reliance upon the truth of the representations communicated by Defendant to Plaintiff in entering into the employment agreement and, subsequently, performing pursuant to the terms and conditions of the employment agreement.

78.   As a direct and proximate result of Defendant's intentional misrepresentations, Plaintiff has suffered substantial pecuniary losses according to proof, including but not limited to unpaid benefits, unpaid wages, withheld EMI Options, as well as other foreseeable consequential damages, both past and future.  As a further direct and proximate result of Defendant's intentional  misrepresentations, Plaintiff has suffered a high level of emotional distress, pain and suffering, humiliation and embarrassment.

79.   Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff thus is entitled to recover punitive damages against Defendant in an amount according to proof.

WHEREFORE Plaintiff prays for judgment as set forth below.

## SECOND CAUSE OF ACTION
## FRAUD AND DECEIT - FALSE PROMISES

80.   Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

81.   Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several promises as to material matters without intending to perform as promised.

82.   Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several promises as to material matters which Defendant did not intend to perform for the purpose of inducing Plaintiff to enter into the employment agreement and to continue to perform pursuant to the terms and conditions of the employment agreement in reliance upon such false promises.

COMPLAINT; DEMAND FOR JURY TRIAL

83.    Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Plaintiff was unaware of Defendant's intention not to perform the material promises and justifiably acted in reliance upon the truth of the promises communicated by Defendant to Plaintiff in entering into the employment agreement and, subsequently, performing pursuant to the terms and conditions of the employment agreement.

84.    As a direct and proximate result of Plaintiff's reliance upon Defendant's false promises, Plaintiff has suffered substantial pecuniary losses according to proof, including but not limited to unpaid benefits, unpaid wages, withheld EMI Options, as well as other foreseeable consequential damages, both past and future.  As a further direct and proximate result of Defendant's false promises, Plaintiff has suffered a high level of emotional distress, pain and suffering, humiliation and embarrassment.

85.    Defendant committed the acts alleged herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.  Plaintiff thus is entitled to recover punitive damages against Defendant in an amount according to proof.

WHEREFORE Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
## FRAUD AND DECEIT - NEGLIGENT MISREPRESENTATIONS

86.    Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

87.    Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant made several representations as to past and existing material facts.

88.    Throughout the negotiations which led to Plaintiff entering into an employment

relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several representations as to past and existing material facts which were false.

89. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several representations as to past and existing material facts which were false, and communicated the representations without any reasonable ground for believing the representations to be true.

90. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Defendant communicated to Plaintiff several representations as to past and existing material facts which were false for the purpose of inducing Plaintiff to rely upon such misrepresentations to enter into the employment agreement and to continue to perform pursuant to the terms and conditions of the employment agreement in reliance upon such misrepresentations.

91. Throughout the negotiations which led to Plaintiff entering into an employment relationship with Defendant, and during the course of Plaintiff performing pursuant to the terms and conditions of the employment agreement established between Plaintiff and Defendant, Plaintiff was unaware of the falsity of Defendant's representations and justifiably acted in reliance upon the truth of the representations communicated by Defendant to Plaintiff in entering into the employment agreement and, subsequently, performing pursuant to the terms and conditions of the employment agreement.

92. As a direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has suffered substantial pecuniary losses according to proof, including but not limited to unpaid benefits, unpaid wages, withheld EMI Options, as well as other foreseeable consequential damages, both past and future. As a further direct and proximate result of Defendant's negligent misrepresentations, Plaintiff has

**COMPLAINT; DEMAND FOR JURY TRIAL**                    13

also suffered a high level of emotional distress, pain and suffering, humiliation and embarrassment.

WHEREFORE Plaintiff prays for judgment as set forth below.

## FOURTH CAUSE OF ACTION
## SEX DISCRIMINATION IN VIOLATION OF THE FEHA

93.     Plaintiff reincorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

94.     Defendant was at all material times an "employer" within the meaning of California Government Code section 12926(d) and, as such, was barred from discriminating against Plaintiff in employment decisions and practices on the basis of Plaintiff's sex as set forth in California Government Code sections 12940, et seq.

95.     Plaintiff was at all material times a covered "employee" within the meaning of California Government Code sections12940, et seq..

96.     Defendant's discriminatory conduct against Plaintiff on the basis of Plaintiff's sex, as alleged with more particularity above, violated California Government Code § 12940(a), which mandates that "It shall be an unlawful employment practice ... [f]or an employer, because of the ... sex of any person, ... to bar or to discharge the person from employment ..., or to discriminate against the person in ... terms, conditions or privileges of employment."

97.     As a result of Defendant's discriminatory conduct against Plaintiff on the basis of Plaintiff's sex, Defendant has caused Plaintiff to incur lost past and future wages and employee benefits and other economic losses in amounts according to proof at trial.

98.     As a further result of Defendant's discriminatory conduct against Plaintiff on the basis of Plaintiff's sex, Defendant has caused Plaintiff to suffer significant emotional distress, pain and suffering, humiliation and embarrassment.

99.     As a further result of Defendant's discriminatory conduct against Plaintiff on the basis of Plaintiff's sex, Defendant has caused Plaintiff to incur attorney's fees and litigation costs.

100.     Plaintiff is informed and believes that Defendant committed the discriminatory acts alleged

COMPLAINT; DEMAND FOR JURY TRIAL                    14

herein maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to recover punitive damages against Defendant in an amount according to proof at trial.

101.   As a direct, foreseeable, and proximate result of Defendant's discriminatory conduct against Plaintiff on the basis of Plaintiff's sex, Defendant has caused Plaintiff to suffer grievous and extensive damages, entitling Plaintiff to recover the following amounts according to proof at trial:

a.   lost past and future wages, including but not limited to salary and EMI Options;

b.   lost past and future benefits, including, but not limited to, lost vacation leave, lost sick leave, lost medical benefits, and other employee benefits;

c.   damages for past and future emotional distress and other non-economic damages;

d.   punitive damages against Defendant;

e.   declaratory and injunctive relief in the form of a Court Order setting forth a finding that Defendant engaged in discriminatory conduct against Plaintiff based on Plaintiff's sex and the issuance of an Order prohibiting any further discrimination against other female employees; and

f.   reasonable attorney's fees, expert witness fees, and costs incurred and to be incurred in regard to Plaintiff seeking her rights under this cause of action.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## FIFTH CAUSE OF ACTION
### FAILURE TO PREVENT DISCRIMINATION  IN VIOLATION OF THE FEHA

102.   Plaintiff reincorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

103.   Plaintiff has fulfilled all administrative prerequisites to the filing of this cause of action.

104.   Defendant was at all material times a covered "employer" within the meaning of California Government Code section 12940(I) and, as such, was barred from failing to take all reasonable steps

COMPLAINT; DEMAND FOR JURY TRIAL

15

necessary to prevent discrimination from occurring.

105.    Plaintiff was at all material times an employee covered by California Government Code sections 12940, et seq.

106.    Defendant violated California Government Code §12940(k) which mandates that, "It shall be an unlawful employment practice ... [f]or an employer, ...to fail to take all reasonable steps necessary to prevent discrimination . . . from occurring."

107.    As a result of Defendant's failure and refusal to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring, Defendant has caused Plaintiff to incur lost past and future wages and employee benefits and other economic losses in amounts according to proof at trial.

108.    As a further result of Defendant's failure and refusal to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring, Defendant has caused Plaintiff to suffer significant emotional distress, pain and suffering, humiliation and embarrassment.

109.    As a further result of Defendant's failure and refusal to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring, Defendant has caused Plaintiff to incur attorneys' fees and litigation costs.

110.    Plaintiff is informed and believes that Defendant's failure and refusal to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring was done maliciously, fraudulently, and oppressively, in bad faith, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights.   Thus, Plaintiff is entitled to recover punitive damages against Defendant in an amount according to proof at trial.

111.    As a direct, foreseeable, and proximate result of Defendant's failure and refusal to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring, Defendant has caused Plaintiff to suffer grievous and extensive damages, entitling Plaintiff to recover the following amounts according to proof at trial:

a.    lost past and future wages, including but not limited to salary and EMI Options;

COMPLAINT; DEMAND FOR JURY TRIAL

b.     lost past and future benefits, including, but not limited to, lost vacation leave, lost sick leave, lost medical benefits, and other employee benefits;

c.     damages for past and future emotional distress and other non-economic damages;

d.     punitive damages against Defendant;

e.     declaratory and injunctive relief in the form of a Court Order setting forth a finding that Defendant failed to take all reasonable steps necessary to prevent discrimination and retaliation against Plaintiff from occurring and the issuance of an Order mandating that Defendant implement policies and procedures which will ensure that in the future Defendant takes all reasonable steps to prevent unlawful discrimination and retaliation against other employees; and

f.     reasonable attorney's fees, expert witness fees, and costs incurred and to be incurred in regard to Plaintiff seeking her rights under this cause of action.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SIXTH CAUSE OF ACTION
### (WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY)

112.     Plaintiff incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

113.     The wrongful termination of Plaintiff's employment was in violation of the public policies of the State of California and the United States of America in that Plaintiff was discriminated against, retaliated against and, ultimately, terminated due to Plaintiff's sex in violation of the FEHA and to avoid paying Plaintiff earned wages, including but not limited to EMI Options, in violation of the California Labor Code.

114.     As a result of the wrongful termination of Plaintiff's employment in violation of the FEHA and the California Labor Code, Plaintiff has suffered lost past and future wages and benefits, and other compensatory damages in an amount according to proof at trial.

115.     As a proximate result of Defendant's wrongful termination of Plaintiff's employment in

COMPLAINT; DEMAND FOR JURY TRIAL

17

violation of the FEHA and the California Labor Code, Plaintiff has suffered and continues to suffer embarrassment, anxiety, humiliation and emotional distress in amounts according to proof at trial.

116. Defendant committed the acts alleged herein, and failed to prevent such discriminatory conduct; maliciously, fraudulently, oppressively and in bad faith, with the wrongful intention of injuring Plaintiff, from an improper motive amounting to malice, and in conscious disregard of Plaintiff's rights. Thus, Plaintiff is entitled to recover punitive damages against Defendant in an amount according to proof at trial.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## SEVENTH CAUSE OF ACTION
## BREACH OF WRITTEN EMPLOYMENT CONTRACT

117. Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

118. Effective October 10, 2017, Plaintiff and Defendant entered into a written contract establishing an employment relationship between Plaintiff and Defendant.

119. The written contract that Plaintiff entered into with Defendant set forth as a material term that Defendant would provide to Plaintiff in exchange for Plaintiff's services as an employee, "2.5% EMI Options in the primary holding company Feed Communications Limited."

120. Defendant breached its written agreement with Plaintiff to provide her "2.5% EMI Options in the primary holding company Feed Communications Limited."

121. At all relevant times, Plaintiff was ready, willing and able to perform, and did perform, as she agreed under the employment contract.

122. As a direct and proximate result of Defendant's breach of the employment contract, Plaintiff has suffered substantial pecuniary losses according to proof, including but not limited to the loss of 2.5% EMI Options in the primary holding company Feed Communications Limited.

WHEREFORE Plaintiff prays for judgment as set forth below.

COMPLAINT; DEMAND FOR JURY TRIAL                    18

## EIGHTH CAUSE OF ACTION
### (BREACH OF THE IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING)

123. Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

124. The employment agreement entered into between Plaintiff and Defendant contained an implied covenant of good faith and fair dealing by which Defendant promised to give full cooperation to Plaintiff in her performance under said contract and to refrain from doing any such act which would prevent and impede Plaintiff from performing all of the conditions of the contract or to be performed by her and to refrain from any act that would prevent or impede Plaintiff's enjoyment of the fruits of said contract.

125. Specifically, the implied covenant of good faith and fair dealing required Defendant to fairly, honestly, and reasonably perform the terms and conditions of the Agreement.

126. Defendant breached the implied covenant of good faith and fair dealing by treating Plaintiff in a discriminatory manner due to Plaintiff's gender, and then by terminating Plaintiff's employment to avoid issuing Plaintiff the EMI Options to which Plaintiff was entitled and which Plaintiff earned. Such bad faith actions by Defendant were not taken because of unsatisfactory job performance by Plaintiff.

127. As a result of Defendant's conduct, Plaintiff has suffered lost past and future economic damages in an amount according to proof at trial.

WHEREFORE Plaintiff prays for judgment as set forth below.

## NINTH CAUSE OF ACTION
### (VIOLATION OF CALIFORNIA LABOR CODE §201 ET SEQ.)

128. Plaintiff hereby incorporates and realleges by reference all previous paragraphs of this Complaint as if fully set forth herein.

129. Defendant wrongfully failed to pay Plaintiff her earned wages and fringe benefits, including but not limited to the EMI Options to which Plaintiff was entitled and which Plaintiff earned at the time of the termination of Plaintiff's employment.

130. Under Cal. Lab. Code §203, Plaintiff is entitled to 30 days continued wages as a

COMPLAINT; DEMAND FOR JURY TRIAL

penalty for willful failure to pay wages when due, in an amount according to proof.

131.   As a direct and proximate result of Defendant's acts as alleged herein, Plaintiff is entitled to recover the 2.5% EMI Options, thirty days continued wages as a penalty for willful failure to pay wages and benefits when due; and reasonable attorneys' fees and litigation costs incurred by Plaintiff herein under California Labor Code Section 218.5.

WHEREFORE Plaintiff prays for judgment as set forth below.

WHEREFORE, Plaintiff requests judgment in Plaintiff's favor and against Defendant for all causes of action as follows:

1.   For past and future economic damages including, but not limited to, lost past and future wages, EMI Options and all other employment benefits, and for interest thereon;

2.   For lost past and future earning capacity;

3.   For past and future non-economic damages suffered including, but not limited to, past and future mental and emotional distress, pain and suffering and other past and future non-economic damages suffered by Plaintiff, according to proof at trial;

4.   For punitive damages;

5.   For Declaratory and/or Injunctive Relief in the form of a Court Order setting forth a finding that Defendant engaged in unlawfully discriminatory and retaliatory conduct against Plaintiff and the issuance of an Order prohibiting any further discrimination against female employees;

6.   For Declaratory and/or Injunctive Relief in the form of a Court Order setting forth a finding that Defendant failed to take all reasonable steps necessary to prevent Defendant from unlawfully discriminating and retaliating against Plaintiff and the issuance of an Order mandating that Defendant implement policies and procedures which will ensure that in the future Defendant takes all reasonable steps to prevent unlawful discrimination and retaliation against other employees;

7.   For reasonable attorney's fees and expert witness fees incurred by Plaintiff herein;

8.   For costs of suit incurred herein; and

9.   For such other and further relief as this Court considers just and proper.

**COMPLAINT; DEMAND FOR JURY TRIAL**                                    20

DATED:  December 21, 2018                    LAW OFFICES OF ALAN ADELMAN

                                                    By:        /s/   Alan Adelman
                                                               ALAN ADELMAN
                                                               Attorney for Plaintiff
                                                               TAMARA HILL


                                            JURY DEMAND

       Plaintiff requests a jury trial on all questions of fact raised by this complaint.

DATED: December 21, 2018                      LAW OFFICES OF ALAN ADELMAN

                                                    By:        /s/   Alan Adelman
                                                               ALAN ADELMAN
                                                               Attorney for Plaintiff
                                                               TAMARA HILL

**COMPLAINT; DEMAND FOR JURY TRIAL**                    21